# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

THE CITY OF STERLING

*v.*

THOMAS GALT *et al.*

*Filed at Ottawa May 15, 1886.*

1. SPECIAL TAXATION—*for local improvement—requisites of ordinance, in fixing the amount.* Where the cost of a local improvement is to be raised, in whole or in part, by special taxation, the ordinance in relation thereto must either state the sum, or give the *data* by which the commissioners can fix the amount to be thus raised, and when so fixed or ascertained in conformity with the ordinance, it is conclusive on the property owners.

2. SAME—*duty of commissioners—assessment on the frontage, or upon value of property.* Where the municipal authorities have fixed in advance the amount to be raised by special taxation, all the commissioners have to do is to so assess the property specially benefited as to raise the required sum. But their assessment must be made according to the scheme which has been adopted, which may be on the frontage principle, or the value of the property may be made the basis of the assessment or apportionment, either mode being lawful.

3. SAME—*rate of assessment, for special taxation, and its conclusiveness.* In cases of special taxation the municipal authorities may impose the entire cost of the proposed improvement upon the contiguous property, upon the theory that the benefits will equal the burden cast upon the property; and the presumption in such case of the equality of the benefits with the burdens imposed, can not be rebutted.

117 11
121 424
123 398

117 11
124 90
124 91

117 11
126 98

117 11
129 29

117 11
130 522

117 11
133 469

117 11
136 567

117 11
138 294

117 11
140 165
141 305
143 99
143 161

117 11
147 118
147 331

117 11
153 476
155 395

117 11
161 200
161 294

117 11
156 496
158 446

117 11
167 342

117 11
170 248
170 351

117 11
174 608

117 11
176 209

117 11
178 238

117 11
185 371

117 11
193 ¹634

117    11
186    9405

117    11
187    o414

117    11
189    4264

117    11
e206    9559

4. SAME—*apportioning the cost between special taxation and general taxation.* The municipal authorities may by ordinance provide that one-half of the expenses shall be raised by general and the other by special taxation; or it may provide that contiguous property shall pay an amount equal to the special benefits it will derive from the improvement, to be ascertained by the commissioners, and that the balance shall be raised by general taxation.

5. SPECIAL ASSESSMENT—*as distinguished from special taxation—rights of property owners under each plan.* A special assessment differs mainly from special taxation in this, that the assessment can not in any case or under any circumstances exceed the benefits the property will derive from the improvement; and the owner has the right, if dissatisfied, to have this question passed upon by a jury, whereas in cases of special taxation the jury have nothing to do with the amount which is by ordinance assessed upon contiguous property.

6. SAME—*ascertaining the cost, and apportioning the benefits.* Where money is sought to be raised by special assessment for a local improvement, the amount necessary for the purpose is ascertained in the first place by a commission appointed by the municipal authorities for that purpose. On application, the county court then appoints three commissioners to make the assessment, who are required not only to apportion the gross amount to be raised on the property benefited, between the lots or parcels of land, as is done in the case of special taxation, but also to determine what this gross sum shall be, by making what they regard an equitable and fair division of the cost of the improvement; and their finding is conclusive, in so far as it fixes the relative amount of the cost of the improvement that is to be respectively borne by the municipality and the owners of the property benefited.

7. In such case, however, each lot owner will have the right to show, on the hearing of the case, that his lot has been assessed for a greater amount than it is benefited, or for more than its proportionate share of the cost of the improvement.

8. SAME—*requisites of ordinance, as to fixing amount.* As the commissioners in cases of special assessments for local improvements are required by law to determine the proportion in which the cost of the same shall be borne between the municipality and the owners of contiguous property, an ordinance for the making of such improvements by special assessment need not specify what proportion of the expense thereof shall be raised by special assessment and how much by general taxation.

9. SAME—*requisites of ordinance, in describing nature and character of improvement.* An ordinance of a city for a local public improvement to be made wholly or in part by special assessments, is fatally defective if it fails to describe the nature and character of the proposed improvement. It is not sufficient that the ordinance refers to specifications on file in the city clerk's office as showing the nature and character of the improvement, as that is not made a source of information.

APPEAL from the County Court of Whiteside county; the Hon. WILLIAM J. McCoy, Judge, presiding.

Mr. A. A. WOLFERSPERGER, and Mr. J. E. McPHERRAN, for the appellant:

Section 116 of the act relating to cities and villages, vests them with power to make local improvements by special assessment, or by special taxation, or both, of contiguous property, or general taxation, or otherwise, as they may prescribe by ordinance. Section 117 requires that when a city or village determines to make any local improvement, it shall, in the same ordinance, prescribe whether the same shall be by special assessment or special taxation on contiguous property, or by general taxation, or both. This statute is warranted by the constitution. *Falch* v. *People*, 99 Ill. 141.

The law places the responsibility of prescribing what improvements shall be made, and the mode and manner, and the extent of them, with the common council. *Foss* v. *City of Chicago*, 56 Ill. 354.

The courts can not legally review the action of the council in these respects. *Fagan* v. *City of Chicago*, 84 Ill. 228.

The ordinance is not void for the reason it does not specify the nature, character and description of such improvement, in pursuance of section 134. *Page* v. *City of Chicago*, 60 Ill. 551; *People* v. *Sherman*, 83 id. 165; *Village of Hyde Park* v. *Borden*, 94 id. 26.

In this ordinance we think the nature and character and locality of the work are sufficiently specified. Its nature is a sewer; the character, an underground sewer. The locality is clearly given. A full description of every part of the work is not required, but it is sufficient to indicate the same generally. The statute does not say how full the description shall be. The reference to the map and specifications makes the character of the work sufficiently plain. *State* v. *City of Plainfield*, 38 N. J. 95.

Messrs. MANAHAN & WARD, for the appellees Thomas A. Galt, Galt & Tracy, and J. V. Farwell:

The ordinance does not specify the nature, character, locality or description of the improvement. *Foss* v. *City of Chicago,* 56 Ill. 354.

The principle requiring a description of the proposed improvement to be set out in the ordinance, is also recognized in *Railroad Co.* v. *City of Chicago,* 56 Ill. 454, *Workman* v. *City of Chicago,* 61 id. 463, *Andrews* v. *City of Chicago,* 67 id. 239, and *Railway Co.* v. *City of Jacksonville,* 114 id. 562.

Statutes authorizing municipal bodies to exercise the right of eminent domain, must be strictly pursued. *Weckler* v. *City of Chicago,* 61 Ill. 143.

The ordinance must designate whether the improvements shall be paid for, either "wholly or in part," in one or another of the different modes, and if in part in a particular mode, must specify what part. This power can not be delegated to the commissioners. *City of Chicago* v. *Wright,* 80 Ill. 579; *Watson* v. *City of Chicago,* 115 id. 78; *Fagan* v. *City of Chicago,* 84 id. 231.

Mr. JAMES D. ANDREWS, for the appellee R. B. Colcord:

The jurisdictional facts must be shown—they will not be presumed. *Kneeland* v. *City of Milwaukee,* 18 Wis. 411; *Eldred* v. *Leahy,* 31 id. 546.

The city had no power to pass the ordinance, no expenditure for the purpose of the proposed work being included in the annual appropriation ordinance of the city. General Incorporation law, art. 7, sec. 7; art. 4, sec. 1; art. 8, secs. 1, 2, 4; art. 9, sec. 16.

This ordinance being an appropriation ordinance, was not published a sufficient time before the filing of the petition. *Skinner* v. *City of Chicago,* 42 Ill. 52.

Messrs. W. & W. D. BARGE, for the appellee the Chicago and Northwestern Railway Company:

The city council is solely vested with power to determine what portion of the total cost shall be paid by the public. *Watson* v. *City of Chicago,* 115 Ill. 78.

The city can not support a claim against the railway company, for paving its road-bed. *Railroad Co.* v. *City of Philadelphia,* 88 Pa. St. 424; *Railroad Co.* v. *Morrisiana,* 7 Hun, 652.

The ordinance is insufficient, because it fails to specify the nature, character and description of the improvement. *City of Chicago* v. *Wright,* 32 Ill. 192; Statutes of 1881, chap. 24, art. 9, sec. 19; 1 Dillon on Mun. Corp. sec. 610. See, also, *Lake* v. *City of Decatur,* 91 Ill. 596; *Hyde Park case,* 94 id. 26; *Gage* v. *Parker,* 103 id. 528.

Mr. CHIEF JUSTICE MULKEY delivered the opinion of the Court:

The city of Sterling, by ordinance, adopted a general sewerage system, and provided for the construction thereof "*by general taxation and special assessments* on property specially benefited." The usual steps required by the statute were taken to bring the case to a hearing in the county court. On the day specified in the notice, a large number of property owners affected by the assessment appeared and filed various objections to the proceeding, one or more of which challenge the validity of the ordinance upon which it is founded. The court, after due consideration, sustained the objections questioning the validity of the ordinance, and entered an order dismissing the proceeding, to reverse which this appeal is brought.

The entire ordinance, except so much of it as relates to the location of the sewers, is as follows:

"Sec. 1. That there be constructed in said city a system of underground sewers having a common outlet, to be known as the 'B street sewer system,' to be described as follows, to-wit: Commencing at a point in said city where the centre line of B street intersects the bank of Rock river; thence northerly," etc. (Here follows a description of the *location* of the sewers.)

"Sec. 2. That said sewer shall be built, as to size, grade, material, and other details, in accordance with the map, plans, profiles and specifications of the same made by John D. Arey, civil engineer, and now on file in the office of the city clerk of said city.

"Sec. 3. Be it further ordained, that the sewer be constructed by general taxation, and by special assessment on property specially benefited by the construction of the said system, in pursuance with an act in article nine (9) of an act entitled 'An act to provide for the incorporation of cities and villages,' approved April 10, 1872.

"Sec. 4. Be it further ordained, that said sewer system be for public use, and that property owners in the vicinity thereof in said city be permitted to connect private sewers with the same, for the proper drainage and sewerage of such property, under the direction of the city council of said city."

It is first objected that as the cost of the work is to be defrayed by special assessment as well as by general taxation, the ordinance is invalid, because it does not fix the proportion, or give some *data* by which to determine how much of the expenses of the improvement is to be raised by either of the methods specified in the ordinance. We do not think this objection is well founded, though it must be conceded it finds support in the late case of *Watson* v. *City of Chicago*, 115 Ill. 78.

Whatever conflict, real or apparent, is to be found in the cases bearing on this question, is believed to result from a failure to keep in view the difference between cases of special assessment and of special taxation. Without going into a

general review of the decisions of this court bearing on the question, we will content ourselves with stating, in as few and plain words as may be, what we understand to be the difference. When the cost of a local improvement is to be raised in whole or in part by *special taxation*, the ordinance itself must either state the sum or give the *data* by which the commissioners can fix the amount to be thus raised, and when so fixed or ascertained, in conformity with the ordinance, it is conclusive on the property owners. In such case the municipal authorities, by ordinance, practically fix and determine in advance the amount the property specially benefited is to pay, and the amount when thus fixed is not open to review. This being done, all the commissioners have to do is to so assess the property benefited as to raise the required sum. This assessment must be made according to the scheme which has been adopted. Sometimes it is done on the frontage principle; in other cases the value of the property is made the basis of the apportionment or assessment. It is lawful to adopt either of these modes. In cases of special taxation, the municipal authorities, if they think proper, may impose the whole of the burden upon the contiguous property, and although, theoretically, this is permitted upon the hypothesis that the benefits will be equal to the burden cast upon the property, yet, whether it be so or not, can not be inquired into. Or the ordinance might provide that one-half of the expenses should be raised by general and the other by special taxation. Or, again, it might provide that the contiguous property should pay an amount equal to the special benefits it would derive from the improvement, to be ascertained by the commissioners, and that the balance should be raised by general taxation. The cases here suggested are all governed substantially by the same principle, and it will be perceived the ordinance in each of them practically fixes the amount to be collected from the contiguous property, and as before stated, when so fixed, the propriety, or even justness, of it is

2—117 ILL.

not open to review, except, perhaps, in cases where the commissioners have acted corruptly.

It follows from what we have said, that if this were a case of special taxation, the objection taken to the ordinance would be well founded, for the ordinance wholly fails to either fix the amount to be assessed upon the contiguous property, or to furnish any *data* by which the commissioners could ascertain the amount. But the case in hand is not one of special taxation. It is, as the ordinance shows on its face, one of *special assessment*, and is governed by radically different principles. A special assessment differs from special taxation mainly in this, that the assessment can not, in any case or under any circumstances, exceed the benefits the property will derive from the improvement, and the owner of the property assessed has the right, if dissatisfied with the assessment, to have this question passed upon by a jury, and if not content with their finding, to have it reviewed in an appellate tribunal, whereas, in cases of special taxation, the jury have nothing to do with the amount which is by ordinance assessed upon the contiguous property. Where, as in the present case, it is proposed to raise money by special assessment for some local improvement, the amount necessary for the purpose is ascertained, in the first place, by a commission appointed by the municipality for that purpose. Upon proper application, the county court then appoints three commissioners to make the assessment. The duties of these commissioners are defined with great particularity in section 140, chapter 24, of the Revised Statutes. (Starr & Curtiss' ed.) That section is as follows: "It shall be the duty of such commissioners to examine the locality where the improvement is proposed to be made, and the lots, blocks, tracts and parcels of land that will be specially benefited thereby, and to estimate what proportion of the total cost of such improvement will be of benefit to the public, and what proportion thereof will be of benefit to the property to be benefited, and

apportion the same between the city or village and such property, so that each shall bear its relative equitable proportion; and having found said amounts, to apportion and assess the amount so found to be of benefit to the property, upon the several lots, blocks, tracts and parcels of land, in the proportion in which they will be severally benefited by such improvement: *Provided,* that no lot, block, tract or parcel of land shall be assessed a greater amount than it *will be actually* benefited."

It is manifest from this section that the commissioners not only apportion the gross amount to be raised on the property benefited, between the lots or parcels of land, as is done in the case of special taxation, but they also determine what this gross amount shall be by making *what they regard* an equitable and fair division of the cost of the improvement. This, as we have already seen, they have no power to do in the case of special taxation. The action of the commissioners is conclusive in so far as it fixes the relative amount of the cost of the improvement that is to be respectively borne by the municipality and the owners of the property benefited; but, as already indicated, each lot owner has the right to show, on the hearing of the cause, that his lot has been assessed for a greater amount than it is benefited, or for more than its proportionate share of the cost of the improvement. Since in the case of special assessments the commissioners themselves determine the proportion in which the cost of the improvement shall be borne between the municipality and the contiguous property owners, it was unnecessary for the city council to determine that matter by ordinance.

It follows from what we have said, the objection to the ordinance on the ground stated is not well founded. The view here taken is fully sustained by the following authorities: *Enos* v. *City of Springfield,* 113 Ill. 65; *City of Galesburg* v. *Searles et al.* 114 id. 217; *White* v. *The People ex rel.* 94 id. 604; *Craw* v. *Village of Tolono,* 96 id. 256.

The ordinance is also assailed on the ground that it does not sufficiently describe the nature and character of the improvement proposed to be made. This objection we regard as well taken. Paragraph 135, chapter 24, of Starr & Curtiss' Statutes, provides: "Whenever such local improvements are to be made wholly or in part by special assessment, the said council in cities, or board of trustees in villages, shall pass an ordinance to that effect, *specifying therein the nature, character, locality and description of such improvement.*" It is obvious, from a bare inspection of the ordinance, that outside of the description of the location of the sewers there is no attempt, in framing the ordinance, to comply with the requirements of this section of the statute. As has frequently been held, this provision of the statute is mandatory. *Foss* v. *City of Chicago,* 56 Ill. 354; *Andrews* v. *City of Chicago,* 57 id. 239; *Lake Shore and Michigan Southern Railroad Co.* v. *City of Chicago,* 56 id. 454; *Lake* v. *City of Decatur,* 91 id. 600; *Jacksonville Ry. Co.* v. *City of Jacksonville,* 114 id. 562. The fact that specifications are referred to as being in the city clerk's office, can not alter the case. That is not a source of information which the law recognizes in these matters. The statute, whether for wise or unwise purposes, has required this information to be inserted in the ordinance itself. That has not been done or attempted to be done.

The ordinance being fatally defective in the respect stated, it follows the order dismissing the proceeding was proper, and it will therefore be affirmed.

*Order affirmed.*